504 A.2d 942

MEYERS PLUMBING AND HEATING SUPPLY
COMPANY, Appellant,

v.

Felix CASTE.

Superior Court of Pennsylvania.

Submitted Nov. 25, 1985.

Filed Feb. 3, 1986.

Marvin J. Apple, Pittsburgh, for appellant.

Michael A. Stone, Pittsburgh, for appellee.

Before CIRILLO, BECK and WATKINS, JJ.

CIRILLO, Judge:

This is an appeal from an order striking a mechanic's lien. We affirm.

At the time this dispute arose, the appellee, Felix Caste, was the owner of a 49 acre tract of land on which he planned to have 42 townhouses built. Appellee entered into an agreement with C & G Plumbing (C & G) for plumbing work to be furnished in connection with the townhouse

project. The appellant, Meyers Plumbing and Heating Supply Company, extended credit to C & G for the purchase of plumbing materials that were used on the project. Prior to completion of their work, appellee Caste requested that C & G leave the site; therefore the contract was never completed. This fact is important insofar as it impacts on the basis of the claim. *See generally, Fisher Sprinkler Co., Inc. v. Ide*, 305 Pa.Super. 554, 451 A.2d 1015 (1982) (contractor sought to recover for labor and materials on a contract which he was barred from completing).

After filing the requisite notice, pursuant to 49 P.S. §§ 1501 and 1502, appellant filed a mechanic's lien against the property and townhouses that constituted appellee's project. The lien described the townhouses as a "building or structure [which] is a construction of 42 residential units located at Wyman Road, Whitehall Borough, Allegheny County, PA." Although there are 42 townhouses, the lien still uses a singular subject and verb. The 42 units reportedly "consist of six (6) or eight (8) unit buildings." Attached to the lien was a partial set of invoices which listed the type of material taken, and the amount charged by C & G.

This case comes before us on appeal from an order of the trial court granting appellee's petition to strike the mechanic's lien claim. Two issues are presented for our review: 1) whether appellant's claim has not been apportioned as required by Section 306 of the Mechanics' Lien Law of 1963, 49 P.S. § 1306(b) [1]; and 2) whether the claim did not include

---

1. 49 P.S. § 1306 provides:

   **§ 1306. Consolidation or apportionment of claims**

   (a) Consolidation of Claims. Where a debt is incurred for labor or materials furnished continuously by the same claimant for work upon a single improvement but under more than one contract, the claimant may elect to file a single claim for the entire debt. In such case, "completion of the work" shall not be deemed to occur with respect to any of the contracts until it has occurred with respect to all of them.

   (b) Apportionment of Claims. *Where a debt is incurred for labor or materials furnished by the same claimant for work upon several different improvements which do not form all or part of a single business or residential plant, the claimant shall file separate claims*

a detailed statement of the materials furnished by the appellant as required by Section 503 of the Mechanics' Lien Law of 1963, 49 P.S. § 1503(6).[2]

> with respect to each such improvement, with the amount of each claim determined by apportionment of the total debt to the several improvements, and in such case, the amount of each separate claim may be less than five hundred dollars ($500), provided that the total debt exceeds five hundred dollars ($500). In no other case shall an apportioned claim be allowed. 1963, Aug. 24, P.L. 1175, No. 497, art. III, § 306.

(Emphasis added).

49 P.S. § 1201(1) defines the word improvement. 49 P.S. § 1201(1) provides:

> **§ 1201. Definitions**
>
> The following words, terms and phrases when used in this act shall have the meaning ascribed to them in this section, except where the context clearly indicates a different meaning:
>
> (1) *"Improvement"* includes any building, structure or other improvement of whatsoever kind or character erected or constructed on land, together with the fixtures and other personal property used in fitting up and equipping the same for the purpose for which it is intended.

2. **§ 1503. Contents of claim**

> The claim shall state:
>
> (1) the name of the party claimant, and whether he files as contractor or subcontractor;
>
> (2) the name and address of the owner or reputed owner;
>
> (3) the date of completion of the claimant's work;
>
> (4) if filed by a subcontractor, the name of the person with whom he contracted, and the dates on which preliminary notice, if required, and of formal notice of intention to file a claim was given;
>
> (5) if filed by a contractor under a contract or contracts for an agreed sum, an identification of the contract and a general statement of the kind and character of the labor or materials furnished;
>
> (6) *in all other cases than that set forth in clause (5) of this section, a detailed statement of the kind and character of the labor or materials furnished, or both, and the prices charged for each thereof;*
>
> (7) the amount or sum claimed to be due; and
>
> (8) such description of the improvement and of the property claimed to be subject to the lien as may be reasonably necessary to identify them. 1963, Aug. 24, P.L. 1175, No. 497, art. V, § 503.

(Emphasis added).

> **Comment—Joint State Government Commission 1964 Report**
>
> Adapted from Section 11, Act of 1901, as amended 1905, April 17, P.L. 172, 49 P.S. 53. The requisites of the contents of the claim have been enlarged and clarified. Clauses (4) and (5) of this section restore in part the averments required to be set forth by the Act of 1901 prior to its amendment by the Act of 1905, supra. The provision in clause (4) requiring the setting forth of the dates of the preliminary notice and of the formal notice of intention is new and was not required by

I

■ The first issue hinges on the interpretation of the word "plant" as used in 49 P.S. § 1306(b). Appellant argues that the statute permits one lien to be filed against the 42 townhouses which are the focus of the lien in this case. Appellee maintains that the statute does not permit a single lien to be filed against the 42 townhouses involved herein. Section 1306(b) requires that separate claims be filed against more than one "business or residential plant." The word "plant" is not defined in the statute and no recent appellate court cases have construed Section 1306(b). We can, however, turn to several trial court opinions which have considered the issue. The present version of 1306(b) is based on Section 12, Act of 1901, 49 P.S. §§ 54, 55. The latest amendment of the statute was enacted in 1963.

One of the more recent trial court cases that has interpreted the current version of 1306(b) is *Waite, Jr. v. Schneider*, 57 D. & C.2d 788 (1972). In *Schneider*, the trial court considered the issue of whether Section 1306(b) required more than one lien claim to be filed when more than one townhouse was the focus of the lien. The case involved a drywall subcontractor who had filed a mechanic's lien against 12 two-story townhouses. The court held that "a group of townhouses is not a residential plant within the meaning of the act." *Id.* at 792. The *Schneider* court also observed the guidance offered by the comment following Section 1306(b), which provides:

> The section is clarified to apply to both business or residential plants. Previous decisions under Section 12, Act of 1901, which used only the word "plant," held that it was applicable only to structures used to carry on trade or business. The use of the words "residential plant" is not intended to change the previous law that *a single claim cannot be filed against an entire row of separate*

the Act of 1901, as amended. See *Hamilton v. Means*, 155 Pa.Super. 245, 250 (1944) [sic], 38 A.2d 528.

*residential dwellings. Todd v. Gernert,* 223 Pa. 103 (1909) [sic], 72 A. 249.

(Emphasis added).

The *Todd* case involved a single claim under the 1901 Act for labor and materials. The single claim was filed against three separate dwelling houses. The *Todd* court held that three separate dwelling houses were not a "plant" for purposes of the 1901 Act.

Although the majority of commentaries and cases discuss the word "plant" in the context of the 1901 Act as opposed to the 1963 version, they are nonetheless helpful for our statutory analysis. *See* Annot., 15 A.L.R.3d 73, 236 (1967); 23 P.L.E., Mechanics' Liens § 23; 53 Am.Jur.2d, Mechanics' Liens § 198 (1970); 20 Standard Pennsylvania Practice 2d, Mechanics' Liens § 105:104. In *Goodyear v. Emele,* 13 North Co.R. 103 (1912), 15 A.L.R.3d 73, 236–37 (1967), the court considered whether the statutory term "plant" applied to a double house with a continuous roof. The structure was divided by a party wall, had no connecting openings, and had separate entrances and exits. The court held that the description of "plant" was not applicable; therefore, a "single mechanic's lien could not be filed against this entire 'structure' or double house." 15 A.L.R.3d 73, 237 (1967). The court pointed out that "the term 'residential plant' did not mean two or more houses built together at the same time, but meant a dwelling house and ... garage ... or some similar building being necessary and used for the convenience of the dwellers in the residence." 15 A.L.R.3d at 237. *Cf. West Philadelphia Brick Co. v. J.D. Johnson & Co.,* 3 Pa.Super. 220 (1897) (interpretation of 1806 Act).

Some cases have given importance to the number of contracts involved in the supply of labor or materials. That is, the number of contracts may help to determine the applicability of the word "plant" as well as the existence of a single unit building. For example, in *Bossen v. Nocella,* 16 D. & C.2d 158 (1956), a contractor filed a single lien

against 20 lots for material supplied for the construction of 20 separate houses pursuant to two contracts. The court held that a single lien in this scenario was fatally defective "because the group of dwelling houses could not properly be regarded as constituting a 'plant'" within the meaning of the 1901 Act. *Id.* at 160, citing *Michael Roofing Co. v. Macrides*, 54 Lanc. 79 (1954).

In *Schively v. Radell*, 227 Pa. 434, 76 A. 209 (1910), where the owner of two lots made separate contracts for the buildings on each lot, the court addressed the issue of whether a subcontractor could file a single lien against two structures on two different lots. The court held that the 1901 Act did not permit one claim to be filed against two structures for materials furnished under more than one contract. *See generally, Union Savings & Building Assn. v. Vahle*, 235 Pa. 435, 84 A. 407 (1912) (better practice is to aver in a claim that several buildings are intended to form one plant); *Pierce, Butler and Pierce Mfg. Co., Inc. v. Rogers*, 60 Pa.Super. 293 (1915) (court may inquire into justness of apportioned claim); *Sumption v. Rogers*, 53 Pa.Super. 109, *aff'd on other grounds*, 242 Pa. 348, 89 A. 121 (1913) (discussion of apportioned claims); *Fotheringham v. McPherson*, 17 D. & C.2d 199 (1957) (interpretation of the term "plant" as used in the 1901 Act).

The foregoing discussion and authority support our conclusion that appellee's several buildings, constituting the 42 unit townhouse project, are not subsumed by the term "plant" within the meaning of 49 P.S. § 1306(b). In addition, we find that it remains logical as well as grammatically correct to avoid the application of the singular word "plant" to more than one townhouse. *See generally, Commonwealth v. Patchet*, 284 Pa.Super. 252, 425 A.2d 798 (1981) (court must give effect to the obvious meaning of clear and unambiguous statutory language); 1 Pa.C.S.A. § 1921(b). Based on this reasoning, it is necessary to regard each townhouse in the housing project as a "residential plant" for purposes of 49 P.S. § 1306(b). Therefore,

we affirm the finding of the trial court that the appellant failed to comply with 49 P.S. § 1306(b).

## II

■ The second issue presented for our review concerns whether appellant conformed with 49 P.S. § 1503(6). We considered the interpretation of that statute in *Fisher Sprinkler Co., Inc. v. Ide*, 305 Pa.Super. 554, 451 A.2d 1015 (1982), wherein we examined the efforts of a contractor who sought to recover for labor and materials on a contract which, as in the case *sub judice*, he was barred from completing. In this context, it was stated that "Under the Mechanics' Lien Law, a complaint that contains a general statement of labor and materials provided under a contract is only permissible where a contractor seeks to recover a sum of money established by a contract." *Id.*, 305 Pa.Superior Ct. at 559, 451 A.2d at 1018 (Cirillo, J., dissenting). In the *Fisher* case, the contractor filed a lien against the one building in which he performed his work. The majority found that the contractor satisfied the specificity requirements of the Mechanics' Lien Law. *See generally, Rush v. Able*, 90 Pa. 153 (1879) (detailed itemization needed); *Fitzpatrick v. Howes*, 76 D. & C. 543 (1951) (failure to separate labor and materials renders claim defective); 23 P.L.E., Mechanics' Lien § 26; 20 Standard Pennsylvania Practice, Mechanics' Lien § 105:131. *Cf. Marchak v. McClure*, 176 Pa.Super. 381, 108 A.2d 77 (1954) (substantial compliance with Act is sufficient).

Application of the foregoing supports our finding that the trial judge did not abuse his discretion in ruling that the appellant did not comply with Section 1503(6) in light of appellant's failure to include all invoices for the material that he supplied on credit.

ORDER AFFIRMED.